# AFFIDAVIT OF ATF SPECIAL AGENT VANESSA FLICK

I, Special Agent Vanessa Flick depose and state as follows:

1. I am a Special Agent with the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I have been an ATF Special Agent since 2022, and during that time I have been involved in investigations of violations of federal firearm and controlled substance laws. Prior to my employment as Special Agent with the ATF, I was a Police Officer in the City of Seattle, WA for approximately twelve years. During my role as a Police Officer, I have made arrests for firearms and narcotics offenses. I also served as an Officer with the Seattle Police Department's East Precinct Anti-Crime Team ("ACT"); the team's primary function was to investigate narcotics activity within the East Precinct. The team's activities included proactive operations to identify and arrest individuals engaged in various levels of drug dealing. Currently, I am assigned to a group in the Boston Field Division of the ATF that, in part, works with other Federal, State, and Local Police Departments to investigate and prosecute violations of the Federal Firearms, Explosives, and Controlled Substance Laws.

2. Based on my training and experience as an ATF Special Agent, I am familiar with federal firearms and narcotics laws. In this regard, I know that it is a violation of 18 U.S.C. § 922(g)(1) for a person who has been convicted in a court of a crime punishable by imprisonment for a term exceeding one year to possess ammunition which had traveled in interstate or foreign commerce. This affidavit is submitted in support of a complaint against defendant Kadeem PIMENTEL ("PIMENTEL"). As set forth below, there is probable cause to believe that PIMENTEL has violated 18 U.S.C. § 922(g)(1). Along these lines, I know PIMENTEL was found guilty of Felon in Possession of a Firearm in violation of 18 U.S.C §922(g)(1) in this

District and was sentenced to twenty-six (26) months' imprisonment for this conviction on or about March 19, 2020. Given this federal conviction for illegally possessing a firearm, and his sentence of over a year incarceration, there is probable cause to believe that PIMENTEL was aware that he had been convicted a crime for which the potential sentence exceeded one year and that he was prohibited from possessing a firearm. I am aware that PIMENTEL is still on federal supervised release for this prior federal firearms conviction and committed the crime in this case while on supervised release. In the prior federal case, PIMENTEL pled guilty to possessing a firearm in Haverhill, MA – the community in which PIMENTEL resides.

3. The facts in this affidavit come from my review of oral and written reports by other law enforcement officers, records including information from database checks, and my training and experience. This affidavit is intended to show merely that there is probable cause for the requested arrest warrant and does not set forth all of my knowledge about this matter.

4. On or about August 17, 2022, in Haverhill, MA, a Haverhill Police Department ("HPD") detective was on patrol duty in an unmarked police vehicle in the vicinity of Varnum and River Streets in Haverhill. The detective observed an individual (who was later identified by officers and known to officers from past encounters) meet with a female and exchange something with her. The individual was then observed placing cash into a mason jar and handing it to the driver of a Nissan Rogue. Based upon the detective's training and experience, the detective recognized this exchange as being consistent with someone conducting a hand-to-hang drug transaction. The detective moved his vehicle to a different location. From that location, he was able to observe that the driver of the Rogue was PIMENTEL. The HPD officer knew PIMENTEL from prior encounters, including firearm-related incidents, and further knew

PIMENTEL did not possess a valid driver's license to operate the vehicle.

5. The detective conducted a motor vehicle stop of the Nissan Rogue. PIMENTEL was driving and the individual, who had conducted the transaction on the street, was the passenger. The detective spoke to PIMENTEL regarding PIMENTEL's driving without a valid license. The detective also confirmed through a query that PIMENTEL did not have a valid Massachusetts license to drive the vehicle. Other HPD officers arrived to support the vehicle stop. The detective also identified the passenger in the vehicle from prior knowledge, and was aware that, like PIMENTEL, the individual did not have a valid driver's license. PIMENTEL informed the detective that the vehicle was his girlfriend's vehicle. PIMENTEL also admitted that he did not have a valid driver's license.

7. The detective asked the passenger about the exchange of money with the woman on the street. The detective observed that the passenger appeared to become nervous. The passenger then reached to the backseat area of the vehicle and retrieved a box of hair extensions. The passenger stated that the exchange of money had to do with the extensions. The detective inquired where the jar of money was. The passenger reached into a black backpack/bag at his feet and withdrew what appeared to be a mason jar that had marijuana in it. The passenger put the jar back into the backpack/bag and placed his hands back into the backpack/bag. Officers instructed the passenger to remove his hand from the backpack/bag. The passenger kept reaching into the bag in a way that officers could not observe what was in the backpack/bag. Officers were aware that PIMENTEL and the passenger had criminal histories that included violence and/or firearms. Based on all the circumstances, and concerns for officer safety, the passenger was removed from the vehicle and an officer looked into the backpack/bag. The

officer identified that there appeared to be a firearm in the backpack/bag. The firearm was subsequently identified as a P80 Glock-style 9mm pistol loaded with 8 rounds of Blazer 9mm ammunition. The handgun did not have a serial number and is colloquially known as a "ghost gun." Both Pimentel and the passenger were arrested.

8. Following the arrests, PIMENTEL's girlfriend, who owned the Rogue, was contacted by HPD officers. The officers requested her consent to search the Rogue. She provided her consent. Pursuant to the subsequent consent search, officers recovered an expended shell casing consistent with a 9mm Blazer round in the area of the drivers' seat. The shell casing is consistent with someone firing a 9mm Blazer round – the same type of ammunition recovered from the seized 9mm pistol. In addition, HPD officers were aware of a prior shooting reported in Haverhill that involved a vehicle with a similar description to the Rogue driven by PIMENTEL.

9. Based on a review of the 9mm Blazer ammunition, ATF agents believe that it traveled in interstate or foreign commerce because that Blazer ammunition is not manufactured in the Commonwealth of Massachusetts and therefore would have had to travel into Massachusetts prior to PIMENTEL's possession on the date noted above.

10. Based on the above, I believe that probable cause exists that, on or about August 17, 2022, within the District of Massachusetts, Kadeem PIMENTEL illegally possessed ammunition in violation of 18 U.S.C. § 922(g)(1).

Signed electronically and sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 on January 12, 2023.

*Vanessa Flick/эз12*
VANESSA FLICK
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

~~Subscribed and~~ sworn to before me this 12th day of January, 2023.   In accordance with Fed. R. Crim. P. 4.1

3:24 p.m.

HON. DAVID H. HENNESSY
UNITED STATES MAGISTRATE JUDGE